

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-1427-11

### EX PARTE MARIO AMARO CASTILLO, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SECOND COURT OF APPEALS DENTON COUNTY

**ALCALA, J., filed a dissenting opinion in which JOHNSON, J., joined.**

### DISSENTING OPINION

I respectfully dissent. I conclude that the court of appeals had jurisdiction over this appeal filed by appellant, Mario Amaro Castillo. It is undisputed that, had appellant sent his notice of appeal and motion for extension of time through the United States Postal Service (USPS), the court of appeals would have jurisdiction over his appeal. But he did not use USPS and, instead, used Federal Express. Consequently, according to the majority opinion, the court of appeals lacked jurisdiction over his appeal.

The only rational basis for disallowing an untimely filed notice of appeal sent by Federal Express while permitting the same notice of appeal sent through USPS is that the plain language of Texas Rules of Appellate Procedure 9.2 refers only to USPS. *See* TEX. R. APP. P. 9.2(b)(1)(A). That rule states, in relevant part, "A document received within ten days after the filing deadline is considered timely filed if it was sent to the proper clerk by United States Postal Service first-class, express, registered, or certified mail[.]" *Id.* It is time to update the rule to include modern-day, nationally recognized mail carriers. But until then, we must decide (1) whether an appellate court does not have jurisdiction over an appeal delivered by a private courier because the plain language includes only USPS, or (2) whether interpreting the rule to include delivery by Federal Express, a nationally recognized private courier that has demonstrated reliability comparable to that of USPS, better effectuates the intent of that rule.

The Texas Supreme Court has consistently held that appellate courts should not dismiss an appeal for a procedural defect whenever an arguable interpretation of the appellate rules would preserve the appeal:

> We have repeatedly held that a court of appeals has jurisdiction over any appeal in which the appellant files an instrument in a bona fide attempt to invoke the appellate court's jurisdiction. Our decisions reflect the policy embodied in our appellate rules that disfavors disposing of appeals based upon harmless procedural defects. Thus, we have instructed the courts of appeals to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule.

*Verburgt v. Dorner*, 959 S.W.2d 615, 616-617 (Tex. 1997); *see also Stokes v. Aberdeen Ins.*

*Co.*, 917 S.W.2d 267, 268 (Tex. 1996) (rejecting lower court's reading of appellate procedural filing requirements as "too restrictive"). This Court has "functionally embraced an approach to perfecting appeals and notice of appeal closer to that of the Texas Supreme Court" and "decline[s] to elevate form over substance."[1] *Few v. State*, 230 S.W.3d 184, 189 (Tex. Crim. App. 2007) (quoting *Bayless v. State*, 91 S.W.3d 801, 806 (Tex. Crim. App. 2002)). I would hold that appellant's mere failure—delivery through an undesignated, but reliable, carrier—does not constitute a jurisdictional defect but a procedural irregularity. *Compare Olivo v. State*, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996) (complete failure to file motion for extension of time to file notice of appeal was jurisdictional defect).

Federal Express is a well-established, nationally recognized courier widely regarded as a leader in parcel-delivery reliability. *See Fed. Express Corp. v. UPS*, 765 F. Supp. 2d 1011, 1015 (W.D. Tenn. 2010) (discussing 2009 Morgan Stanley Research Parcel Returns Survey ranking Federal Express first under "Service Reliability").[2] According to its website, Federal Express "uses a global air-and-ground network to speed delivery of time-sensitive

---

[1]     *Compare Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (in construing statutes, "we necessarily focus our attention on the literal text of the statute in question" because "the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was adopted.").

[2]     *See also* NICOLE M. MAYERHAUSER & ERICH H. STRASSNER, U.S. DEPT. OF COMMERCE BUREAU OF ECONOMICS, "PROTOTYPE QUARTERLY STATISTICS ON U.S. GROSS DOMESTIC PRODUCT BY INDUSTRY" (2011), *available at* http://www.bea.gov/scb/pdf/2011/07%20July/0711_brief_indy_ accts.pdf (providing data on industry-level economic performance, listing Federal Express in "Principal Sources of Data for Quarterly Industry and Commodity Output and Prices" under "couriers and messengers").

shipments, usually in one to two business days with the delivery time guaranteed," a claim substantiated by the company's track record.[3]  If the mailbox rule originated because "it is presumed, from the known course of business in the post-office department, that [a document] reached its destination at the regular time, and was received by the person to whom it was addressed," *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884), then that presumption must logically extend today to include a private courier such as Federal Express, which has provided over forty years of reliable, nationwide service. *See Fed. Express Corp.*, 765 F. Supp. 2d at 1015.[4]  To conclude otherwise would frustrate the intent of the rule of ensuring timely delivery of documents to be filed with the court.  As this Court has noted, "[a]s societal conditions change, so do procedural requirements and rules." *Few*, 230 S.W.3d at 190. We should construe Rule 9.2 accordingly.

In this case, Federal Express delivered appellant's documents to the proper designated address within 24 hours of the time appellant tendered the documents to it.  Had appellant used USPS, the documents would have been considered timely received if they have been

---

[3]    *See* "FedEx Express" information page at http://about.van.fedex.com/fedex_express; William B. Cassidy, *FedEx Annual Revenue Rises to $39.3 Billion*, THE JOURNAL OF COMMERCE ONLINE (Jun. 22, 2011), http://www.joc.com/parcel-package/fedex-annual-revenue-rises-393-billion; Dean Foust, *Frederick W. Smith: No Overnight Success*, BLOOMBERG BUSINESSWEEK (Sept. 20, 2004), *available at* http://www.businessweek.com/magazine/content/04_38/b3900031_mz072.htm ("Although FedEx has spawned numerous competitors, it is still the biggest operator, with a 44% share of the air express market.").

[4]    In response to the prevalent use of Federal Express, Congress amended the federal mail-fraud statute to include "private interstate commercial carriers, such as . . . Federal Express, in addition to the U.S. Postal Service." *United States. v. Marek*, 238 F.3d 310, 318 (5th Cir. 2001) (citing 18 U.S.C. § 1341), *cert denied*, 534 U.S. 813 (2001).

received nine days after that. A criminal defendant's entire appeal should not be thrown out merely because he used a mail carrier that is at least as reliable as USPS, particularly when his mail was actually received on the first of the ten days to which he would have been entitled had he used USPS. To decline jurisdiction on this basis would be to elevate form over substance in contravention of this Court's precedent. *See Few*, 230 S.W.3d at 189; *Bayless*, 91 S.W.3d at 806. Because appellant's use of Federal Express instead of USPS is a harmless procedural defect in light of that company's status as a reliable mail carrier, I respectfully dissent.

Alcala, J.

Filed: June 20, 2012

Publish